IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| REBECCA ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-0455 |
| ) | Judge Trauger |
| STHS Heart, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Pending before the court is the Motion for Reconsideration filed by plaintiff Rebecca Allen (Docket No. 66), the defendant's response (Docket No. 72), and the plaintiff's reply (Docket No. 73). For the reasons discussed below, the plaintiff's motion will be denied.

Allen worked in the cash application/billing department of defendant STHS Heart, LLC ("St. Thomas"), which operates the St. Thomas Heart clinic at St. Thomas Hospital in Nashville, Tennessee.[1] She was fired in August 2008. Allen contends that her firing was illegally motivated by the protected leave she took pursuant to the Family and Medical Leave Act ("FMLA"). Allen suffers from fibromyalgia, which causes her to feel occasional pain, numbness in the limbs, and fatigue. She claims that, on some mornings, these symptoms are so severe that she cannot get out of bed or operate a telephone.

These flare-ups caused her to be late to work on occasion, and Allen received approval

---

[1] A full discussion of the factual background of this case can be found in the court's Memorandum regarding the parties' motions for summary judgment. (Docket No. 64 at 1-12.) The condensed version presented here is drawn from that Memorandum.

1

from St. Thomas to take intermittent FMLA leave on these mornings. The company's general attendance policy requires employees to call in and report expected tardiness before their shift starts,[2] but Allen routinely waited until after she arrived at work to inform her supervisor that her fibromyalgia caused her to be late. Notably, Allen's drive to work took between 45 minutes and two hours, and she was undoubtedly able to call before leaving her house.

On May 21, 2008, Allen was disciplined for failing to properly give pre-shift notice on several days when her medical condition caused her to be tardy. Eventually, she was fired for this and other disciplinary problems. Allen filed suit, asserting claims for interference and retaliation under the FMLA and for discrimination under the Americans with Disabilities Act and analogous state statutes. The parties filed cross-motions for summary judgment.

In her summary judgment briefing, Allen argued that any attempt by St. Thomas to enforce the pre-shift call-in policy against employees taking FMLA leave was an illegal interference with those employees' FMLA rights. She also argued that St. Thomas was equitably estopped from firing her because her supervisor had, at one point, told her that it was acceptable to give notice of FMLA-protected tardiness after arriving at work, without calling in beforehand. Allen conceded, however, that the supervisor told her on May 21, 2008 that pre-shift notice was required.

The court dismissed the plaintiff's ADA claim but left the FMLA interference and retaliation claims for trial. (Docket No. 65.) It held that the defendant's generally applicable

---

[2] The parties dispute whether the defendant usually applies the pre-shift call-in policy to employees taking FMLA leave.

pre-shift call-in policy is "a reasonable requirement that is aimed at ensuring that employees do not abuse their leave" and that the policy "does not discourage employees from taking FMLA leave and does not conflict with the FMLA." (Docket No. 64 at 20.) Thus, the court held that St. Thomas can enforce the policy against employees who arrive late to work for FMLA-protected reasons. But the court found that there were questions of fact as to (1) whether the defendant was equitably estopped from firing Allen, and (2) whether, in repeatedly disciplining Allen, Allen's supervisor was motivated by her dislike of Allen's repeated tardiness and her skepticism that Allen's fibromyalgia was a legitimate illness. (*Id.* at 21-22.) The FMLA claims survived for these reasons.

Allen has now filed a Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 54(b), arguing that the court should have awarded summary judgment in her favor on the interference claim. "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004). Here, there has been no change in law, and the plaintiff does not offer new evidence. Because the court's previous decision does not contain any clear error, the plaintiff's motion is meritless.

First, Allen argues that there is no issue of material fact as to whether St. Thomas was equitably estopped from firing her and that summary judgment on the issue should be granted in her favor. For estoppel to attach, a plaintiff must show "(1) a definite misrepresentation as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) a resulting detriment to

3

the party reasonably relying on the misrepresentation." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 557 (6th Cir. 2009).

Allen's estoppel claim rests on the allegation that her supervisor initially told her that she was not required to call in before her shift. In its Memorandum, the court noted that "[t]here is enough evidence for a jury to reasonably conclude that, before May 21, 2008, Allen's supervisor told her that she did not need to follow the generally applicable call-in procedure when her fibromyalgia caused her to arrive late." (Docket No. 64 at 21.) This conclusion was supported by Allen's own testimony and by the supervisor's testimony that it was a "mistake" to discipline Allen for not calling ahead in May 2008.

But issues of fact remain. The plaintiff argues that the supervisor "testified that she told Ms. Allen that she did not have to comply with pre-shift call-in rules prior to her [May 2008] absences." (Docket No. 67 at 3.) This is false. In fact, the supervisor testified that she had no such conversation with Allen:

> Q. Were you the one who would have communicated to Ms. Allen what the rules were in terms of what she needed to do to get FMLA leave approved on a given day or would someone else have been in charge of telling her that?
>
> A. I was not in charge of telling her that.
>
> Q. Did you ever tell her what the rules were personally?
>
> A. No.

(Docket No. 33, Ex. 8 at 59.) Obviously, this testimony creates a dispute regarding what the supervisor told Allen. In addition, the supervisor stated that she "[didn't] know" whether the call-in policy applied when Allen was tardy and that she "would assume that a handbook would

4

apply to all employees," including those taking FMLA leave. (*Id.* at 63.)

Furthermore, there is evidence that Allen continued to arrive late to work without calling in before her shift, even after learning that this was unacceptable under the company's attendance policy. In August 2008, Allen's supervisor drafted a written disciplinary document noting that Allen was absent or tardy without giving proper pre-shift notice on July 23 and 31 and August 7, 14, 19, and 20. The document stated that Allen was being placed on probation due to her "continued failure to contact [her supervisor] when she is unable to report to work on time." (*Id.*, Ex. 9 at 5.)

This indicates that, even if the supervisor did initially tell Allen that it was acceptable to arrive late without giving notice, Allen was not relying on this statement when she failed to call in before her shift. To show reliance, the employee must show that she "change[d] [her] position for the worse" based on the employer's statement. *Dobrowski*, 571 F.3d at 555 (citation omitted). If Allen knew about the call-in policy and nevertheless continued to arrive late without giving notice, it supports the conclusion that she would have refused to follow the policy regardless of what her supervisor said. *See id.* at 557-58 (finding no estoppel because the plaintiff employee planned to take time off for surgery regardless of whether he received FMLA leave; nothing indicated that "his decision to have the surgery was contingent on his understanding of his FMLA status"). Because questions of fact exist regarding Allen's conversation with her supervisor and regarding her reliance on her supervisor's statements,

5

summary judgment is inappropriate.[3]

Second, the plaintiff argues that the defendant could not lawfully apply its pre-shift call-in policy to employees taking FMLA leave. But Allen, relying on *Cavin v. Honda of America Manufacturing, Inc.*, 346 F.3d 713 (6th Cir. 2003), is simply reiterating a legal argument that the court explicitly rejected in its Memorandum. This is not a proper basis for a motion for reconsideration. *See Database Am., Inc. v. Bellsouth Advertising & Publishing Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993) ("A party seeking reconsideration must show more than a disagreement with the Court's decision . . . .") (citation omitted). The court has already explained why *Cavin* is distinguishable from the instant case.[4] (*See* Docket No. 64 at 17-18.)

Furthermore, in deciding that St. Thomas could enforce its generally applicable call-in policy, the court followed the Sixth Circuit's recent unpublished opinion in *Allen v. Butler*

---

[3] The plaintiff argues that the "Court's Order indicates that the Court failed to grant Plaintiff summary judgment on the equitable estoppel issue because there are questions of fact as to whether [the supervisor's] discipline of Ms. Allen was motivated by her resentment of Ms. Allen's FMLA leave." (Docket No. 67 at 4.) This is a misreading of the court's Memorandum. The questions of fact regarding the supervisor's motives provided a separate, additional ground for denying the defendant's Motion for Summary Judgment on the FMLA interference claim. (Docket No. 64 at 22.) The Memorandum did not state that the motives were relevant to the equitable estoppel inquiry.

[4] The plaintiff's citation to *Walton v. Ford Motor Co.*, 424 F.3d 481 (6th Cir. 2005), is unavailing. In that case, the Sixth Circuit characterized the holding in *Cavin*: "[W]e held that employers cannot deny FMLA leave on grounds that an employee failed to comply with internal procedures – as long as the employee gives timely verbal or other notice." *Id.* at 486 (quotation marks and citation omitted). As explained in this court's Memorandum, this holding has limited application to the instant case, because St. Thomas did not deny FMLA leave and because Allen did not give timely notice of her tardiness. (Docket No. 64 at 18.)
On the latter point, the plaintiff essentially argues that the FMLA required St. Thomas to give Allen two working days to report any incident of FMLA-protected tardiness. (Docket No. 73 at 5.) The court has already rejected this absurd interpretation of the relevant FMLA regulation. (*See* Docket No. 64 at 16-17.)

6

*County Commissioners*, 331 Fed. Appx. 389 (6th Cir. 2009).  (*See* Docket No. 64 at 19-21.)  In *Allen*, the court held that an "employee on FMLA leave may be terminated for violating the more stringent requirements of a concurrent paid sick leave policy," as long as that policy is reasonable and "neither conflicts with nor diminishes the protections guaranteed by the FMLA."  331 Fed. Appx. at 394, 396.

The plaintiff's brief spends all of two sentences addressing *Allen*.  She argues that *Allen* is bad law because it "reli[ed] on Seventh Circuit case law, which . . . *Cavin* explicitly rejected," and because "the *Allen* panel had no authority to contradict *Cavin*."[5]  (Docket No. 67 at 6.)  First, this is factually incorrect.  *Allen* did not rely on *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706 (7th Cir. 2002), which is the Seventh Circuit case that *Cavin* declined to follow.  *See Cavin*, 346 F.3d at 722.  *Allen* did cite other Seventh Circuit cases, but it relied largely on Third Circuit precedent.  *See Allen*, 331 Fed. Appx. at 394-95 (discussing and quoting at length *Callison v. City of Philadelphia*, 430 F.3d 117 (3d Cir. 2005), which the court found to be "analogous" to the facts in *Allen*).  Second, regardless of the plaintiff's protestations, *Allen* is the best indication of how the Sixth Circuit would rule on the issues in this case.  The plaintiff has failed to show that it was clear error for this court to rely on a year-old, on-point Sixth Circuit opinion.

For the reasons discussed above, the Motion for Reconsideration filed by the plaintiff (Docket No. 66) is **DENIED**.

---

[5] The *Allen* court was certainly aware of *Cavin*, given that both the majority and the dissenting opinions cite the case.  *See Allen*, 331 Fed. Appx. at 392, 398.  Even so, the majority stated that the court was addressing "an issue of first impression for [the Sixth Circuit]."  *Id.* at 393.

It is so Ordered.

Entered this 21st day of June 2010.

_____
ALETA A. TRAUGER
United States District Judge